United States v. Bennett. Mr. McGarrow, we'd like to hear from you. May it please the court. Good morning, counsel. My name is Patrick Michael McGarrow. I represented Davon Bennett at trial, and I do so again here on appeal. And as trial counsel, I became intimately aware with the facts and circumstances of what I can only characterize as an atypical and somewhat unusual federal drug conspiracy case. In most federal drug conspiracy cases, we see wiretaps, we see recorded phone calls, we see extensive surveillance and records of sales to either undercover agents or confidential informants. In this particular case, there was none of that. According to the government, this was a good A lot of drugs, guns, and money. A lot of drugs, guns, and money. And obtaining pursuant to warrants. That's correct. That's correct. And I guess the manner in which they were obtained provided me with a defense and an argument to make a trial. But we have several issues here in this case that arose during the course of trial and pretrial. And I'd like to focus my argument on the first three issues presented in my brief. Not that I'm abandoning the fourth issue, but time is limited. And the first issue is the denial of confrontation. Now, in this particular case, there were six government informants that had agreed to testify as part of plea bargains. And several of those people had already been convicted upon their pleas of guilty and cooperation agreements. And several of which had already completed their sentences. Because of the length of time that they Were the plea agreements or cooperation agreements admitted into evidence? I believe there was testimony about that. Were they used for impeachment? Yes. And I believe the agreements themselves were introduced into evidence. And there's one clause in there For impeachment purposes? If memory serves me, I believe the government Sometimes the government will introduce the agreement itself to take the sting out of cross-examination. It's been a while, but if I remember right, I believe that is exactly what happened here. Because I was able to quote the exact language from the cooperation agreements. And there was one clause in it in particular that became the bone of contention. And that clause was the obligation to provide jury But the bottom line question is Were the cooperation agreements and the plea agreement came before the jury? Did they not? Yes. So that's That makes your case a little more problematic, doesn't it? No, because what happened was That the court specifically forbade me From cross-examining From a line of cross-examination To at least several of the witnesses And from making an argument to the jury on summation. And the line of cross-examination argument Was that these witnesses were testifying Pursuant to their cooperation agreements Not out of some sense of civic duty or moral obligation But because they believed That they had a continuing obligation to the government To provide that testimony Because if they did not, the government I thought the reason that the trial judge was skeptical Of your line of questioning Was that you were trying to create An impression that the defendants were testifying To avoid the threat of future prosecution And that they had already been prosecuted And so they were protected against future prosecution By virtue of the double jeopardy clause They were not going to be prosecuted They couldn't have been Because they'd been prosecuted And that was the concern that Judge Boyle raised And I specifically said I recognize they cannot be re-prosecuted However, under the plea agreements And under my interpretation of the law Under the Arizona case that I cited Both at trial and in my brief It wasn't that they could be re-prosecuted It was that they would face If they reneged on their plea agreements The government's end of the bargain Which was a 5K letter Could be withdrawn And then the mandatory minimums could kick in And their sentences could be enhanced But these witnesses had already been sentenced That's correct So what Judge Boyle was saying was You can't re-sentence them And you cited the Ricketts case Which had an explicit provision in the plea agreement That said that if the witness If the defendant did not cooperate He could be re-prosecuted But there's no such plea agreement provision In these plea agreements, is there? No, but the interpretation is Because of that clause that says These are continuing obligations And because before I was cut off From that line of inquiry At least one of the witnesses had testified That in his mind He could face additional punishment That was a factor for the jury That the jury should have been allowed to hear And that I should have been allowed to argue Can I ask you a little bit about the timing of this? Three of the cooperating witnesses Had already testified Before you raised this question Well it was actually before Judge Boyle raised the question I had been permitted to question the first three witnesses And then when I started to question It was either the third or the fourth Judge Boyle at that point said We have to excuse the jury Because we have to resolve this issue right here and right now And then after Judge Boyle made his ruling Said you're forbidden from engaging in that question Didn't you get the benefit of what you wanted Just simply by virtue of the fact that you were able to Pursue this line of questioning With three of the cooperating witnesses? No, because at the end of the case And when I look at error and prejudice I always look at the summations And I work my way backwards At the end of the case I was not permitted to argue to the jury That these people gave false testimony Because they believed that they had to give Favorable testimony to the government Because if they did not They would face additional punishment Not necessarily re-prosecution But an additional sentence or additional jail time That was the... The analogy that I drew And I told Judge Boyle I've been threatened with this very scenario Representing cooperators How could that be If they've already been conclusively sentenced? I can tell the court that I've been threatened with that From clients who have been Sentenced under 5K letters Not necessarily Rule 35 Because Rule 35 is different Yes, who had been sentenced And had been recalcitrant About coming back to testify And U.S. attorneys have told me Right to my face If your client doesn't do this He reneges on the agreement Guess what? All bets are off I've never had that happen Once the sentence has been imposed And entered The district judge can't even re-sentence again It's over It becomes final If there's an appeal It goes to the Court of Appeals But the district court has no jurisdiction It's my position And there really isn't much case law On this topic Because I don't know if it comes up all that often But again, this is an atypical, unusual case It's my position That double jeopardy would not apply And even the case cited by the government Where the court It was a 1985 case And the court sui sponte reinstated it You've got the basic point across Which is that you've got the cooperating Agreements Before the jury And so the jury knew That the witnesses were testifying Under cooperating Agreements And that they had received Some definite, tangible benefit In return for the In return for the testimony Is that not right? With the first three, yes But the problem is, at the summations The government argues These witnesses didn't perjure themselves And they testified truthfully Not because they're under A cooperation agreement Because they came and did their civic duty But the witnesses were testifying After having cut a deal With the government They gave them certain benefits In return for their testimony And the jury was aware of that And that's got to be The bottom line We can sort of fine tune it Around the edges But the core of it Has to be that they were testifying Pursuant to cooperating agreements Which gave them a benefit For their testimony But that's not what the government argued In their summations But you argued it in your closing argument You argued that they were a bunch of guys Who had sold their testimony For a deal And that got in What troubles me is What you were trying to get These defendants who don't know Really this answer Could they be re-sentenced? As a trial judge I would sustain the motion On Rule 403 Because it's misleading the jury They're not going to be re-sentenced They can't be re-sentenced And that's the part that's troubling here You got in what you needed to get in That they had a potential interest In testifying You got that in But you didn't get in the part That's misleading It's my position that they could be re-sentenced Because violation of the contract Between them and the government Otherwise What would happen is Cooperating defendants would sign these agreements Because it's done that way in the Eastern District They get sentenced They get their 5K letters Did the cooperating agreement itself Hold open Some possibility of re-sentencing? It didn't specifically say All it said is these are continuing obligations With no end in sight That's sort of boilerplate It did not indicate The cooperation agreement Did not indicate That there would be some kind of re-sentencing It did not say that No You got a pretty heavy blow On this You said Now for those cooperating witnesses Who signed plea agreements That are still in effect The motive to lie is right there In black and white Because who decides whether they're telling the truth And you go on for an age and a half Hammering that You say these are ongoing plea agreements And that they're lying Or could be Suggesting to the jury I don't know what more you would want to get out of this The argument that the other people Who had been sentenced And had been Completed their sentences Were likewise lying because they believed That they were under the threat of getting additional jail time Ongoing plea agreements Which you are referring to The ones that were ongoing even after they settled Even after they're sentenced I was I believe I was referring to the There were two individuals that had not been sentenced at that point One being Jarku Bennett And the other one Those are the normal situations But the situation that you were arguing To the court was that these were Ongoing plea agreements Even after they had been sentenced And You wanted to get that To the jury And the only thing that you were cut off from Is what is the sanction Could they be resentenced And the judge cut you off But you got the full I think you got the full benefit Of your argument here In this statement These ongoing agreements are still in effect The motive to lie Is right there in black and white Because Who decides Whether to tell the truth Before you go on and find out It's pretty effective Thank you I'll keep that in mind when my client files a 2255 Which I guess Brings me to the next point Which would be suppression I think here The It's very clear That there were There was custodial questioning going on In front of my client Throughout the process From the point that law enforcement Entered the home Pointed to the warrant And said we want you to cooperate Specifically pointed to the word cocaine Brought my client back to the police station We made the point in all of our cases Didn't the Supreme Court make the point In Rhode Island, Viennese We have Whether Whether the statements Were spontaneous or coerced Really That kind of call Belongs to the jury I mean not to the jury To the trial judge who heard the actual testimony Of the Questioning officers And also the defendant And they have a Particular finding of fact With a credibility component to it And that is Are these Were these Statements that were made Spontaneously Or were they made as a result Of some sort of coercion And the district court made A finding on that Why shouldn't we stick with it Because our case law Has said this is This kind of Whether Somebody is in custody And whether there is actual interrogation Or not It's for a trial judge And I thought the questions here Also The only things that were asked Were innocuous booking questions There's two reasons why this court Shouldn't credit that First, it's undisputed That Mike Klein invoked his right to counsel After he was Mirandized Second If you look on page I believe it's 92 of the joint appendix There's one question on my cross Examination of the One of the law enforcement agents Which concerned the period Of time between the time he invoked his right To counsel and the time that he Made the last incriminating statement And that's where the Where the officer Did a double clutch and he Essentially said well it's not like we weren't Asking him anything we weren't talking to him About the case I'd given him the opportunity To explain himself which was His terms so there was Questioning going on It wasn't Of an But the point was that It was a full suppression hearing There had to be a determination Of credibility, very important here About whether this was volunteered The claim is that The fellow points To where the drugs are And You can see an incentive for that Because otherwise the agents Are going to tear his house apart And then he's at the booking station And he makes the comment Out of the blue according to them Too bad you didn't come tomorrow You'd have gotten a lot more drugs I mean Those kind of statements I can see an argument you'd say well Maybe that was part of interrogation That's why we have suppression hearings And then their findings And in the absence I believe the standards Clear error We don't overturn those I believe that the whether or not a Person's statement is spontaneous Is not necessarily It's a mixed question of fact and law Because a spontaneous statement has to be In essence blurted out and forced The problem here is that there's a Finding of fact that the statements were made Voluntarily And I think That's the hard thing because The finding of fact Rests upon observation And credibility judgment And observation of the evidence It's hard to reverse Live testimony with a cold record That's That's I agree it's hard to Overcome a finding of fact but the conclusion Of law is That whether he was Continued to be questioned after the invocation That produced the quote unquote Spontaneous statement whether that was the I'm I'm sorry Yes but that was contrary To the exact statements Of the law enforcement officer That admitted essentially on Cross-examination that these weren't just Booking questions Thank you We'd like to hear From Nurse Let's hear from you May it please the court On behalf of the United States This is A typical gun and drug case With respect to the First issue raised by the defense With regard to cross-examination In this particular case as the court has noted The defendant had an opportunity To bring in information Illicit testimony from all of the witnesses That gauged so that the jury Could gauge the credibility And assess those witnesses For bias and motive Several of the plea agreements were admitted The government did ask questions about those plea agreements In its case in chief The defense though was able to explore All of those Cooperation agreements the motives For lying what they wanted If you look at the whole record The court will see that I want to draw the court's attention to Where this single line Of questioning that the court had concerns Came up and how it impacted The overall case As the court noted earlier The issue didn't arise until after Three witnesses had testified Then the district court took a break And engaged in a colloquy With defense counsel and he specifically Asked about How is it You cannot get a higher sentence If you have already been sentenced You cannot come back for resentencing And so the court wanted to stop And inquire into the legal Basis for that And the defense counsel agreed In that colloquy with the judge That once a person pleads guilty Received a sentence, serves that sentence Punishment is finished and double jeopardy attaches And it bars that person from being resentenced Defense counsel admitted that he didn't know That if there was any specific law That allowed his questioning on that line And he also admitted that he didn't Ask the three prior witnesses about Rule 35 cooperation But he did raise the claim That he mentioned today that he has Clients that have been threatened But he didn't ask those questions With respect to the three witnesses that had come before And the court remained concerned About the one line of questioning Which was can you come back and be resentenced To a higher sentence This is an awfully fine point And I think we are missing The forest or the trees Here because the The overall point Is he did get those agreements in Before the jury and they knew That They had testified In return for benefits Awarded in the In the agreements And so there's not only That That makes this seem to me A very, very minor point But The evidence against Mr. Bennett was Was really Very, very Very, very strong In terms of what was uncovered From his home And The rest, the firearms, the drugs The paraphernalia, as you say It's a typical case And it's hard to believe That this one little speck Even if the district judge was wrong Which I don't think the district judge was Had any Impact on whether these folks received A fair trial Agreed, your honor There's a mountain of evidence here There was, and as you go to the sufficiency of the evidence Arguments, all of those come into play First to note that the defendant did not even Appeal his guns or his drug Conspiracy and drug trafficking counts He was only challenging the sufficiency With respect to the 924C And the money laundering With respect to what the jury saw Remember they had the Photographs in front of them So they saw where everything was located They saw the heroin The 790 grams of heroin The three kilos of cocaine Vacuum sealed And the gun in the Honda In the secret compartment The jury saw where the guns and drugs were located In connection with In the house You have Marijuana in the kitchen, in the washing machine You had $81,000 Vacuum sealed in packets In a bag in the bedroom He had his pants There were men's pants with $4,500 In the pocket I mean there was overwhelming evidence of the guns And drugs in proximity to each other So yes, the government would agree with that He was a pretty large dealer I mean Where was he being supplied from? Did that come in? I do not recall from the record Where he was being supplied from came in But yes, he was a large dealer He was known I believe one witness testified that he was willing to pay Up to $45,000 a kilo Which is almost twice the going rate Because it was of such pure quality And the indictment And evidence spanned from 2000 to 2015 And there were folks That were dealing with him all along the way We have a lot of cases where they Pick up drug dealers And they do the search warrants And they go into the houses And the apartments and the cars and so forth But the amounts of cash The amounts of heroin Three kilos Or whatever it's like Usually you can find one in the research You find traces You find scales He had quite a supply He did Well the witnesses who testified Did talk about how they would go back to him Because he had the quantity And he had the quality And one I think witness testified That he once brought $180,000 in cash To purchase Cocaine from the defendant Because that was what he could provide And that was the quality Of the material So with respect to the cross The government does not believe That there was any error in the court Exercising its discretion To allow that limit Would you like to just briefly address The custodial interrogation court Yes your honor The court correctly did not err In finding that there was no custodial interrogation These statements were voluntary In context there were a total of five statements Before the district court In that motion to suppress But only two came in at trial Counsel in his argument Cites the JA-92 Which is during the suppression hearing That was the FBI agent Coates Who during direct testimony Was talking about the statements The defendant volunteered to him In response to the cooperation If you cooperate But that was not admitted at trial So the JA-92 Citation to Coates' testimony And that statement was not admitted at trial If you focus on what was It was an interrogation And the statements weren't coerced These were simply routine booking questions And the Finding of fact was made That they were made voluntarily So that about wraps it up Yes your honor And it was just those two questions that came up What were the two statements That actually came in at trial The two statements that came in at trial Were at booking and the exact words Your honor let me You should have come later You would have gotten I was getting ready to buy the drugs Right it was to Winslow was present for both of them Winslow testified And he said man y'all should come tomorrow I was going to take all that money And buy a whole bunch of marijuana I was going to go into that shed and work And then the other statement was He had not sold The defendant had said I had not sold any work Since Maurice Vaughn had been arrested He used dog pound But the three other statements were not admitted Just those two And if you were to look If the court were to conclude And go on to the next analysis Whether or not the admission was harmless It was completely harmless Because it didn't go to The There was so much other evidence in the case Regarding heroin and cocaine These statements only went to the marijuana There were all That was interpreted as Cocaine but it was passed It was an exculpatory as opposed to an inculpatory So Unless the court has And you've covered The two questions that the appellant raised And You can rest on your briefs On the rest of it You don't abandon any argument or anything Yes your honor That is what I was going to do If the court has no further questions for me I will rest on the briefs And ask that the court affirm I think I confused you I think I mentioned Mr. McGarrow When you Came up to Be your good argument But I realize you Are rangerizing And I apologize For any mix up on my part Now Mr. McGarrow You have Some rebuttal time Yes your honor I didn't reach the third issue which I wanted To talk about briefly which was the sufficiency Argument and I don't know if that's permissible Because counsel didn't have the opportunity To argue that but I guess Before I even get to that My question is Under 5k agreements What happens if The defendant who pleads guilty In the sentence in a 5k agreement And Let's say is under A sentence of supervised release And the government picks up another person In the conspiracy a year or so down the line And then says to that defendant We want you to testify And that person either refuses Or develops a selective case of amnesia Is it the government's position That they are then powerless to enforce that agreement I don't think so I believe that the government has the power To enforce that agreement How would they enforce it My assumption would be A motion to the district court to Correct the sentencing error Vacate a sentence You have no jurisdiction over that You argued they had To the jury they had Ongoing plea agreements Inferring to the jury they had ongoing obligations And benefits The defendants that were still operating Pursuant to those You said basically all those Who testified pursuant to plea agreements Are still ongoing And you basically said They had a motive to lie And I'm not sure What more you want I mean Even if they could be re-sentenced To double what they are going to do Their motives were to lie It's just how heavy a lie But you went on to point out The next few pages You viewed the evidence Suggested they were all lying They were in bed together Family I guess you called them Right But it seems to me You got a pretty good use of that It's pretty technical to say What was the sanction When the sanction was implied They had to do it I had to be very careful To make sure I abided by the court's ruling And that's for sure And that's appropriate And In essence I had to pull a punch What's the punch you had to pull? The punch is that These people believe they can get additional time And they're testifying To make sure they don't get any additional jail sentence These are people that Have been to jail And they're going to do anything not to go back And that's why they came here Not out of some civic duty But in any event As far as my sufficiency arguments I believe that they're well presented In my brief as well as my point four And unless the court has any specific questions I'd happily rely upon those arguments I want to thank you And I see that your court appointed Mr. Magara We really appreciate that Thank you I actually agreed to do the appeal pro bono for my client Since his conviction As source of income is dried up As we can all imagine So I did the appeal pro bono for him I want to thank you just the same Thank you We'll come down and greet counsel Then move to our next case
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Richard Mark Gergel